IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DENNIS WEBSTER, individually, and as Administrator of the Estate of DUSTIN WEBSTER, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| FIRSTEXPRESS, INC., POMP'S TIRE SERVICE, INC., and DAVID SCHIMMEL, | ) ) ) |
| Defendants. | ) |

18 C 2777

Judge John Z. Lee

# MEMORANDUM OPINION AND ORDER

Plaintiff Dennis Webster ("Plaintiff"), individually and as the Administrator of the Estate of Dustin Webster ("Dustin"), has filed this lawsuit against Defendants, FirstExpress, Inc. ("FirstExpress"), Pomp's Tire Service, Inc. ("Pomp's"), and David Schimmel. Dustin, a Pomp's employee, was killed in a collision with a vehicle owned by FirstExpress and operated by Schimmel. Pomp's seeks dismissal of Counts I and II of the amended complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that the claims are barred by the Illinois Workers' Compensation Act ("IWCA"), 820 Ill. Comp. Stat. 305/1 *et seq*. For the following reasons, the motion is granted.

## Background[1]

This case arises out of a fatal motor vehicle collision that occurred at approximately 10:30 a.m. on November 17, 2017, in LaSalle County, Illinois. Am. Compl. ¶¶ 8–11, ECF No. 23.

---

[1] The following facts are taken from the amended complaint and are accepted as true at this stage. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (stating that, at the motion-to-dismiss stage, the court "accept[s] as true all well-pleaded facts alleged").

Dustin, who was employed by Pomp's as a truck driver, collided with a truck operated by Schimmel on behalf of his employer, FirstExpress. *Id.* ¶¶ 7–11.

Prior to the collision, Pomp's had "intentionally directed and compelled" Dustin to work more than forty hours per week and failed to provide a full day of rest, which Plaintiff alleges violated the One Day Rest In Seven Act ("ODRA"), 820 Ill. Comp. Stat. 140/1 *et seq*. *Id.* ¶¶ 13–18. Pomp's had also required Dustin to work "mandatory overtime" without allowing him sufficient rest. *Id.* ¶ 19. Furthermore, according to Plaintiff, Pomp's knew that its excessive hours requirements would affect Dustin's health and ability to operate his truck safely. *Id.* ¶¶ 18–19, 25–27. Because of his excessive work schedule, Dustin became too tired to operate his motor vehicle safely, resulting in the fatal collision. *Id.* ¶ 20–21, 27.

Based on these events, Plaintiff brings a wrongful death claim and a survival action against Pomp's (Counts I and II), as well as wrongful death and negligence claims against FirstExpress and Schimmel (Counts III and IV).[2] Plaintiff previously filed a claim with the Illinois Workers' Compensation Commission ("IWCC") on December 21, 2017, related to this incident.[3]

## **Legal Standard**

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, when considering motions to dismiss, the Court accepts

---

[2]  This case was removed from LaSalle County, invoking this Court's jurisdiction pursuant to 28 U.S.C. § 1332.

[3]  The Court takes judicial notice of this public proceeding. *See Olson v. Champaign Cty., Ill.*, 784 F.3d 1093, 1097 n.1 (7th Cir. 2015) ("As a general rule, we may take judicial notice of public records not attached to the complaint in ruling on a motion to dismiss under Rule 12(b)(6).").

2

"all well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013) (citing *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013)). At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). As such, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## Analysis

Pomp's argues that Plaintiff's claim is barred by the exclusive-remedy provision of the IWCA. The IWCA provides, in relevant part: "[n]o common law or statutory right to recover damages from the employer . . . other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act, to any one wholly or partially dependent upon him, the legal representatives of his estate, or any one otherwise entitled to recover damages for such injury." 820 Ill. Comp. Stat 305/5(a). Additionally, "[t]he compensation herein provided, together with the provisions of this Act, shall be the measure of the responsibility of any employer" included in the workers' compensation scheme. *Id.* 305/11.

Courts have consistently interpreted these provisions to mean that workers' compensation benefits are the "exclusive remedy" for injured workers covered under the IWCA. *See Luna v. United States*, 454 F.3d 631, 634 (7th Cir. 2006) ("[T]he IWCA is the exclusive remedy for workers injured on the job; covered employers cannot be sued for accidental workplace injuries."); *Johnson v. Alberici Constructors, Inc.*, No. 12-CV-0568-MJR-DGW, 2012 WL 12842844, at *3 (S.D. Ill. Oct. 12, 2012) ("Once an injured worker chooses to obtain compensation under the IWCA, any civil action is barred."); *Folta v. Ferro Eng'g*, 43 N.E.3d 108, 116 (Ill. 2015) ("[D]espite limitations

3

on the amount and type of recovery under the [IWCA], the [IWCA] is the employee's exclusive remedy for workplace injuries."); *Mason v. John Boos & Co.*, 959 N.E.2d 209, 212 (Ill. App. Ct. 2011) ("Employees who are injured during the course of work are not permitted to seek and recover compensation under both the [IWCA] and common law.").

The exclusive-remedy rule does not apply, however, if a plaintiff can show: "(1) that the injury was not accidental; (2) that the injury did not arise from his or her employment; (3) that the injury was not received during the course of employment; or (4) that the injury was not compensable under the Act." *Meerbrey v. Marshall Field & Co.*, 564 N.E.2d 1222, 1226 (Ill. 1990); *see also Garland v. Morgan Stanley & Co., Inc.*, 996 N.E.2d 188, 198 (Ill. App. Ct. 2013). Here, Plaintiff contends that the non-accidental injury exception applies.

I. **The Non-Accidental Injury Exception**

An injury is accidental under the IWCA if it is "traceable to a definite time, place, and cause, and occurs in the course of employment unexpectedly and without affirmative act or design." *Garland*, 996 N.E.2d at 198. To show that an injury was not accidental, a plaintiff must allege that the employer "acted deliberately and with specific intent to injure" the employee. *Id.*

Plaintiff alleges that Pomp's knew that its hours requirement would cause Dustin to "become exhausted" and "unable to maintain the required level of alertness," leading to his motor vehicle collision. Am. Compl. ¶¶ 25–27. In his view, these allegations are sufficient to support a reasonable inference that Pomp's intended to injure Dustin. Furthermore, he contends, even if Pomp's did *not* intend to kill Dustin, the allegations in his amended complaint are sufficient to draw a reasonable inference of "intent to harm or injure [him]." Pl.'s Resp. at 5, ECF No. 66.

Pomp's disagrees, arguing that Plaintiff's allegation that Pomp's knew that Dustin's work schedule "*would likely affect*" his alertness and ability to operate a motor vehicle, Am. Compl. at

4

¶ 19, is insufficient to give rise to an inference that Pomp's acted with intent to harm. Pomp's relies on *Garland*, where the Illinois Appellate Court found that an allegation that an employer had intentionally "exposed [the decedent] to the dangers which ultimately caused the injuries" was insufficient to satisfy the IWCA's non-accidental injury exception. 996 N.E.2d at 199. The court concluded that exposure to possible harm was not "specific intent" to injure and that the plaintiff was therefore barred from civil recovery by the IWCA. *Id.* at 199, 205.

Illinois and federal courts that have addressed this issue have consistently concluded that exposure to possible harm is insufficient to fit within the non-accidental injury exception. For example, in *Copass v. Illinois Power Co.*, the Illinois Appellate Court explicitly adopted the requirement that a plaintiff allege an employer's specific intent to harm:

> Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, willfully failing to furnish a safe place to work, or even willfully and unlawfully violating a safety statute, this still falls short of the kind of actual intention to injure that robs the injury of accidental character.

569 N.E.2d 1211, 1216 (Ill. App. Ct. 1991) (citing 2A A. Larson, Workmen's Compensation Law § 68.13, at 13–36 through 13–44). Other courts have followed suit. *See, e.g.*, *Zurbriggen v. Twin Hill Acquisition Co., Inc.*, 338 F. Supp. 3d 875, 886 (N.D. Ill. 2018) (concluding that allegations that an employer "knew [that its required uniforms] were unsafe but went forward with the rollout anyway without concern for the consequences to its employees" did not "pass muster under the intentional-tort exception as fashioned under . . . Illinois law"); *Glasgow v. Associated Banc-Corp*, 980 N.E.2d 785, 791 (Ill. App. Ct. 2012) (finding allegations that an employer "knowingly, willfully, and purposely failed, with obvious intent" to provide adequate security to prevent robberies insufficient to satisfy the non-accidental injury exception); *Hartline v. Celotex Corp.*, 651 N.E.2d 582, 585–86 (Ill. App. Ct. 1995) (finding allegations that an employer manifested

5

"intent to kill" by "exposing plaintiff to asbestos with the awareness that a strong probability of death was created" insufficient to establish the exception); *Mayfield v. ACME Barrel Co.*, 629 N.E.2d 690, 694 (Ill. App. Ct. 1994) (finding allegations that an employer "acted intentionally" in creating unsafe working conditions insufficient to establish non-accidental injury).

Plaintiff alleges that Pomp's scheduled Dustin for excessive hours, "knowing" that it would make him "more prone" to motor vehicle collisions and be "exhausting and injurious to his health."[4] Am. Compl. ¶¶ 18, 25. Simply put, these allegations fail to rise to the level of "specific intent" to harm required by Illinois law, under which even knowingly exposing an employee to a dangerous situation is insufficient to fit within the non-accidental injury exception. *Garland*, 996 N.E.2d at 199. Even considering these allegations in the light most favorable to Plaintiff, they do not establish that Pomp's acted "deliberately with specific intent" to harm Dustin. *Id.*

## II. Voluntary Disbursement of Payments

Plaintiff also argues that the payments that have already been made by Pomp's workers' compensation insurance carrier were "voluntarily disbursed" and therefore do not bar him from civil recovery. Pl.'s Resp. at 3. Under Illinois law, the IWCA exclusive-remedy provision may not bar a plaintiff's civil recovery where he receives "voluntarily disbursed" or "unsolicited" workers' compensation benefits from his employer or the employer's insurer. *Reed v. White*, 921 N.E.2d 1243, 1248 (Ill. App. Ct. 2010). Generally, benefits are "voluntarily disbursed" or

---

[4] Plaintiff further alleges that these actions violated the ODRA, although he did not set forth such a claim separately in his amended complaint. The parties focus on whether the ODRA provides a private right of action. Because the ODRA provides that "the Director of Labor shall be charged with the duty of enforcing" its provisions, 820 Ill. Comp. Stat. 140/2(a), 140/6, the Court holds that the ODRA does not provide a private right of action. Illinois and federal courts to address this issue have reached the same conclusion. *See, e.g.*, *Sawyer v. Vivint*, No. 14 C 8959, 2015 WL 3420615, at *4 (N.D. Ill. May 28, 2015); *Thakkar v. Station Operators Inc.*, 697 F. Supp. 2d 908, 927 n.21 (N.D. Ill. 2010); *Carty v. Suter*, 863 N.E.2d 771, 773 (Ill. App. Ct. 2007); *Kostecki v. Dominick's Finer Foods, Inc.*, 836 N.E.2d 837, 845 (Ill. App. Ct. 2005).

"unsolicited" when they are provided without a plaintiff taking "any affirmative act[ion] to seek those benefits." *Wren v. Reddick Cmty. Fire Prot. Dist.*, 785 N.E.2d 1052, 1057 (Ill. App. Ct. 2002). In other words, the employer or insurer disburses the benefits of its own accord rather than in response to a plaintiff's request for them. *See Reed*, 921 N.E. 2d at 1248; *Wren*, 785 N.E.2d at 1052; *Copass*, 569 N.E.2d at 1215.

Here, it is undisputed that Plaintiff filed a workers' compensation claim prior to commencing this litigation and pursued that claim for approximately three months before this lawsuit was filed. As such, Plaintiff undertook an "affirmative act" to seek benefits, meaning that any benefits disbursed after this point would not be considered "voluntarily disbursed."

Plaintiff argues, however, that he only filed his claim with the IWCC in order to toll the statute of limitations. He relies primarily on *Wren v. Reddick Community Fire Protection District*, where the Illinois Appellate Court concluded that "nothing should prohibit a cautious plaintiff with a pending lawsuit from also filing a workers' compensation claim to avoid the bar of the statute of limitations." *Id.* at 1057–58. *Wren*, however, is distinguishable from this case in several respects. There, the plaintiffs filed a civil lawsuit prior to filing their workers' compensation claim, which they later filed shortly before the statute of limitations on the claim was due to expire. *Id.* at 1054. What is more, that case involved a dispute as to whether the plaintiffs were "employees" under the IWCA, making it unclear that they would be entitled to workers' compensation benefits. *Id.* at 1055. Here, in contrast, Plaintiff filed his IWCC claim approximately one month after the collision occurred, and several months prior to the filing of this lawsuit. In addition, the parties in this case have stipulated to the fact that Dustin was employed by Pomp's and was a covered employee under the IWCA, so the doubt that existed as to the *Wren* plaintiffs' entitlement to benefits is not present

here. Given these distinctions, Plaintiff's reliance on *Wren* is misplaced, and the Court concludes that the benefits he received were not "voluntarily disbursed."

## Conclusion

For the reasons stated herein, Pomp's motion to dismiss Counts I and II of Plaintiff's amended complaint is granted. Counts III and IV remain as to FirstExpress and Schimmel.

**IT IS SO ORDERED.**      ENTERED 3/19/19

_____
**John Z. Lee
United States District Judge**